# UNITED STATES DISTRICT COURT


SEALED
xx xxx xxx
xx_____xx

| SOUTHERN | DISTRICT OF | TEXAS |
|---|---|---|

UNITED STATES OF AMERICA

V.

Elberto Esiquiel BRAVO
Y.O.B.: 1959
U.S. Citizen

**United States District Court
Southern District of Texas
FILED**

**JAN 1 5 2015**

**Clerk of Court**

UNSealed 1/20/2015

## CRIMINAL COMPLAINT

Case Number: M-15-0041-m

I, Liza Sotelo, the undersigned complainant state that the following is true and correct to the best of my

Knowledge and belief.  On or about _____March 23, 2010_____ In _____Hidalgo_____ County, in
                                           (Date)

the _____Southern_____ District of _____Texas_____ Defendant(s) did,

Knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.

in violation of Title _____18_____ United States Code, Section(s) _____3_____.

I further state that I am a(n) _____Special Agent_____ And that this complaint is based on the
                                        Official Title

following facts:

### See Attachment "A"

Continued on the attached sheet and made a part of this complaint: ☒ Yes   ☐ No

_____
Signature of Complainant

Liza Sotelo, FBI
Printed Name of Complainant

Sworn to before me and signed in my presence,

January 15, 2015                                    at     McAllen, Texas
Date                                                        City and State

U.S. Magistrate Dorina Ramos
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## Attachment "A"

In February 2010, agents with the Drug Enforcement Administration (DEA) conducted an investigation into a drug trafficking organization responsible for the distribution of hundreds of kilograms of cocaine. As part of the investigation, on February 26, 2010, a Hidalgo County Sheriff's Office (HCSO) Deputy conducted a traffic stop on a vehicle being driven by Luis Martinez-Gallegos (Gallegos) as it travelled on FM 2221 near Mission, Texas. A search of the vehicle resulted in the seizure of approximately eighty-nine (89) kilograms of cocaine. Gallegos was subsequently arrested. Following Gallegos' arrest, Justice of the Peace (JP) Ismael Ochoa, set bail for Gallegos at $2.5 million. An immigration detainer was placed on Gallegos due to Gallegos being a citizen of Mexico with no legal status to be in the United States, and Gallegos was placed in the Hidalgo County Jail.

On March 23, 2010, JP Ochoa signed an order reducing the bail from $2.5 million to $50,000. On March 24, 2010, an attorney-surety bond was posted securing Gallegos' bail. After the bond was posted, due to the immigration detainer, Gallegos was ordered removed by Immigration officials and Gallegos was deported to Mexico via the Brownsville, Texas Port of Entry on April 19, 2010.

Agents have debriefed several cooperating individuals (CI) who have informed the agents that the reduction of Gallegos' bond and subsequent removal from the United States was part of a scheme implemented to prevent Gallegos' from being tried or punished for the narcotics offense.

CI#1 informed agents that CI#1 was involved in narcotics trafficking. CI#1 stated that CI#1 was aware that Gallegos had been arrested on February 26, 2010, while transporting approximately 89 kilograms of cocaine. CI#1 stated that CI#1 believed that Gallegos would be facing federal narcotics charges due to the amount of cocaine involved in the offense. CI#1 stated that following Gallegos' apprehension, CI#1 was aware that the initial bail amount had been set at $2.5 million, and that CI#1 approached another individual (CI #3) about the possibility of having Gallegos' bail reduced and posted. CI#1 stated that CI#1 knew that Gallegos was illegally present in the United States, and that an Immigration Detainer had been placed on Gallegos. CI#1 informed agents that CI#1 knew that even if a bond was posted, Gallegos would be remanded to the immigration officials and deported. CI#1 told agents that CI#1 told CI #3 that CI#1 wanted Gallegos to be deported so that Gallegos would no longer be in custody and would not be facing a trial or punishment, and could continue to assist CI #1 with his/her narcotics activities. CI#1 stated that CI #1 later learned that CI #3contacted the Defendant in reference to acquiring assistance with getting Gallegos' bail reduced and a bond posted. CI#1 stated that CI #3 informed CI#1 that the Defendant arranged for a meeting with a local attorney who was capable of getting the bail reduced and the bond posted due to the connections that the attorney had with JP Ochoa. CI#1 stated that CI#1 provided approximately $100,000 to CI #3. CI#1 stated that this money was supposed to take care of all of the costs associated with having Gallegos deported, including paying the judge, the attorney, the CI #3 and any other individual involved in the scheme, and to secure that Gallegos' bond would be posted. CI#1 stated that he/she provided some of the currency given to the Defendant, and that another individual (CI#2) provided the remainder. CI#1 stated that all the currency provided represented proceeds derived from the distribution of narcotics.

CI#2 confirmed to agents that CI#2 was involved in narcotics trafficking and that CI #2 was aware that Gallegos had been apprehended with the cocaine in February 2010. CI#2 informed agents that CI#2 was aware that CI#1 wanted to get Gallegos deported so that Gallegos would not face federal narcotics charges. CI#2 stated that he/she gave CI#1 approximately $70,000 in order to help pay the costs associated with securing Gallegos' bail reduction and deportation. CI#2 told agents that CI#2 did not initially believed that CI#1 would be able to arrange for Gallegos' deportation due to that amount of cocaine and Gallegos' illegal status, however CI#2 later learned that the bail had been reduced, Gallegos' bond posted and that Gallegos had been deported.

CI #3 has informed the agents that CI #3 was contacted by CI#1 in early 2010 regarding Gallegos' arrest for a large amount of cocaine. CI #3 stated that CI#1 told CI#3 that CI #1 was looking for help in getting Gallegos' bail reduced so that a bond could be posted and Gallegos would be deported. CI #3 stated that CI #3 contacted the Defendant because CI #3 believed that the Defendant might be able to assist CI #1. CI #3 stated that CI #3 and the Defendant were aware that Gallegos had been arrested for possessing a large amount of cocaine and had no status to be in the United States, and that an Immigration Detainer had been secured for Gallegos. CI #3 stated that the Defendant contacted an attorney that the Defendant believed would be able to get the bail reduced, due to the attorney's connection to JP Ochoa, and ultimately effectuate Gallegos' deportation. CI #3 stated that the Defendant arranged for a meeting with CI#3 and the attorney. CI #3 stated that the Defendant and CI #3 subsequently met with the attorney. CI #3 stated that during the meeting, the Defendant retrieved the currency provided by CI #1 from CI#3's vehicle and delivered the currency to CI #3 and the attorney. CI #3 stated the currency was then given to the attorney The Defendant stated that this was payment for arranging the bail reduction, and ensuring that the bond was posted so that Gallegos would be deported.